UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS; NEW JERSEY CARPENTERS FUNDS AND THE TRUSTEES THEREOF,<br><br>Plaintiffs,<br><br>v.<br><br>AG CONSTRUCTION CORP.,<br><br>Defendant. | Civ. No. 14-5818 (KM)(MAH)<br><br>OPINION |

AG Construction Corp. contracted with a labor union to have unionized employees perform work on a construction project. The company and the union agreed that AG Construction would make contributions to union funds for various "fringe benefits." The union alleged that AG was delinquent in making these contributions, and commenced an arbitration proceeding. The arbitrator agreed that AG was delinquent, and entered a final award ordering AG to pay its outstanding contributions. The Arbitrator also ordered AG to pay interest, liquidated damages, attorneys' fees, and arbitration fees.

The union petitioned this court to confirm the arbitrator's award. For the most part, I have granted that unopposed motion, but I have modified the award. Because I am unable to determine how the award calculates interest and liquidated damages, I do not confirm that portion of the award. I will, however, entertain a motion to reconsider and amend the judgment within 14 days if there is anything the Union believes I have overlooked.

1

**Background**

AG Construction Corp. entered into a contract with a labor union called the New Jersey Regional Council of Carpenters ("Union"). Under the contract, AG would hire members of the Union to perform work on construction projects that AG was completing. (Agrmt., 1).[1] As part of the agreement, AG was required to make contributions to various union funds for "fringe benefits" (*e.g.*, the Pension Fund, the Health Fund, the Annuity Fund, the Vacation Fund, and the Training and Educational Fund). (Agrmt., 1; CBA § XXXI, ¶ 4). The Union initiated an audit of the employer's records, and allegedly discovered that AG had not made some of the required contributions. (Award, 2).

The Union inititated an arbitration proceeding to recover the delinquent contributions. (Award, 2-3). The proceedings were conducted by Mr. J.J. Pierson, Esq., whom the CBA specifies as the "Permanent Arbitrator" to adjudicate disputes resolving from the CBA. (CBA, § XXVI). AG did not appear or otherwise defend itself in the arbitration. (Award, 1). The Arbitrator concluded that AG Construction Corp was delinquent on its contributions in two categories: "for the audit period January 2010 and June 30, 2013 in the amount of $306,746.22," and for "the payroll periods of December 30, 2013 through February 22, 2014 in the amount of $54,903.63." (Award, 3). The "audit period January 2010 and June 30, 2013" perhaps refers to a date range, although this is not specified.

In addition to allowing the Union to recover delinquent contributions, the CBA allows the Union to recover interest, attorneys' fees, and costs. (CBA § XXVI, ¶ 2). Presumably pursuant to these provisions, the Arbitrator awarded

---

[1] Citations to the record will be abbreviated as follows:

"Agrmt." – Short Form Agreement, New Jersey Regional Council of Caprenters, Dkt. No. 1, Exh. B.
"Award" – Award and Order by J.J. Pierson, Arbitrator, Dkt. No. 1 Exh. D.
"CBA" – Buliding Contractors Association of New Jersey Collective Bargaining Agreement, Dkt. No. 1, Exh. A.
"Petition" – Petition to Confirm Arbitration Award and Entry of Judgment, Dkt. No. 1.

some $188,057.92 in interest, liquidated damages of $72,330.00, attorneys' fees of $90,412.50, and arbitration costs of $750.00. (Award, 3-4). In total, the arbitrator awarded the Union some $713,200.27.

The union has petitioned this Court to confirm the Arbitrator's award. AG has not opposed the petition or otherwise appeared before this Court.

## Discussion

Federal law gives the party to an arbitration one year from the date of the arbitrator's award to file a motion in district court to confirm the award. (9 U.S.C. § 9). Here, the arbitrator entered his award on April 30, 2014. (Award, 5). The Union petitioned this court to confirm the award on September 18, 2014. (Petition, 1). Thus, the petition is timely.

*Standard of Review*

The standard for a district court to vacate an arbitration award entirely is rather lofty. Federal law allows such an action only in rather egregious situations such as corruption, evident partiality, misconduct, or an award far exceeding the arbitrator's powers. 9 U.S.C. § 19(a)(1) through (4).[2]

A federal court may, however modify an arbitration award under several instances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

---

[2] Federal law additionally allows a district court to vacate an award under less restrictive circumstances where a non-party who is affected by the arbitration so requests. 9 U.S.C § 10. No such third-party has appeared in this case.

3

9 U.S.C. § 11. My review of the arbitrator's decision is therefore limited. Nonetheless, where there is an "evident material miscalculation of figures," it is appropriate to modify the award.

*Application to this award*

With respect to the portion of the award representing delinquent contributions, the award will be confirmed. However, the record in this case does not reveal how the Arbitrator has calculated interest, liquidated damages, and attorneys' fees, or whether those calculations are rooted in the CBA.

The Arbitrator's damage award contains six parts:
- $306,746.22 representing delinquent contributions for "the audit period of January 2010 and June 30, 2013." (Award, 3).
- $54,903.63 representing delinquent contributions for "the payroll periods of December 30, 2013 through February 22, 20[1]4." (Award, 3).
- $188,057.92 in "interest at the rate of 1% above the current prime rate per annum." (Award, 3).
- $72,330.00 in "liquidated damages...for the period such monies remained outstanding after the date such contributions became due and payable." (Award, 3).
- $90,412.50 in attorneys' fees, representing approximately 25% of the $361,649.85 in principal due.
- $750.00 in arbitration costs.

With respect to the delinquent contributions of $306,746.22 and $54,903.63, the Arbitrator appears to have relied on the audit, as is appropriate.

However, with respect to the interest calculation of $188,057.92, more detail is needed. The Arbitrator explained that he used an interest rate of "1%

4

above the current prime rate," meaning an interest rate of 4.25%.[3] However, it is not evident what start and end dates were used to calculate the interest due. For instance, to calculate the interest due on the $306,746.22 in delinquent contributions, did the Arbitrator use a start date of January 1, 2010, which the Arbitrator identified as the beginning of the "audit period" in question? (Award, 3). Was it the June 30, 2013 date which the Arbitrator identified as the end of the "audit period?" (Award, 3). And, for the $54,904.63 in delinquent contributions, was the start date December 30, 2013, which the Arbitrator identified as the start of the "payroll period"? (Award, 3). Or, rather, was the start date the date that these contributions were originally due? For both calculations, was the end date the date of the Arbitrator's decision? Without these crucial details, one cannot know whether there is an "evident material miscalculation of figures" in the arbitrator's decision. 9 U.S.C. § 11. I do note, however, that on most likely assumptions, interest at the rate of 4.25% could not possibly approach $188,057.92.

Likewise, the Union has provided no support for the "liquidated damages" calculation. The Arbitrator calculated a damage amount of $72,330.00. I am unable to discern where the liquidated damages amount comes from. There is no citation to a liquidated damages provision in the CBA.

With respect to attorneys' fees, the CBA seems to provide the prevailing party attorneys' fees in the amount of 27.5% of the first $750 awarded, and 22.5% of any amount recovered over $750. (CBA, § XXVI, ¶ 3). The Union, though, has not explained why the figure awarded by the arbitrator— "25% of the principal due"— is the proper calculation. (Award, 3).

It is possible that the method for calculating these figures was explained in perfect detail in the Union's submissions to the arbitrator. The record in this Court, however, contains no such detail. It is therefore impossible to provide even the limited review called for under the Federal Arbitration Act.

---

[3] The prime rate for as of the date of the Arbitrator's decision on April 30, 2014 was 3.25%. See http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm.

With respect to the arbitration costs, the arbitrator reasonably awarded the Union the $750.00.

The Union has additionally requested that I award it the fee it paid to this Court to file its petition. The CBA provides that where legal action is required to effect collection of a delinquent contribution, AG should be liable for the court costs. (CBA, § XXVI, ¶ 2). I will therefore award the Union costs of $400.

**Conclusion**

As the record stands, I can grant the Union's motion to confirm only as to the arbitration award as modified: *i.e.*, the award minus the interest, liquidated damages, and attorneys' fees. As to these, there appears to be an erroneous calculation, or no calculation at all. Should the Union wish to present evidence substantiating the arbitrator's calculation of these other categories of damages, it may file a motion to reconsider and amend the judgment within fourteen days. Otherwise, the Court will enter final judgment.

Dated March 30, 2015
Newark, New Jersey

_____
**KEVIN MCNULTY**
**United States District Judge**