UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY REGIONAL COUNCIL OF CARPENTERS; NEW JERSEY CARPENTERS FUNDS AND THE TRUSTEES THEREOF,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**AG CONSTRUCTION CORP.,**<br><br>**Defendant.** | Civ. No. 14-5818 (KM)(MAH)<br><br>**OPINION** |

I have spent considerable time and effort cleaning up a slipshod arbitration award rendered by J.J. Pierson. Even where a petition is unopposed, key figures—interest rates, for example, or "liquidated damages"—cannot simply be plucked from the air; they must conform to the CBA. The difference is not trivial. I now enter judgment in the amount of $475,726.56, some $237,000 lower than the figure calculated by the arbitrator. If I had not authorized a motion for reconsideration, that figure would have been even lower.

This case arises from a construction company's alleged failure to make contributions to a union fund for employee "fringe" benefits. The union brought the matter to arbitration and obtained an award. The union then filed a motion before this Court to confirm that award. I granted that motion in part and denied it in part. With respect to three categories of damages that the arbitrator had awarded, I held that the arbitrator had erred, or at least had not adequately explained how those damages were calculated. I allowed, however,

1

that the Union could file a motion for reconsideration within fourteen days explaining the arbitrator's calculations. The union has filed such a motion. They ask that I confirm the arbitrator's award with respect to two of the three categories of damages I had previously declined to confirm. After reviewing the union's submissions, I will modify the arbitrator's award to reduce the amount of damages in those two categories. *See* 9 U.S.C. § 11(a) (court may modify award to correct an "evident material miscalculation of figures"). I will confirm the Award as modified.

**Background**

AG Construction Corp. entered into a contract with a labor union called the New Jersey Regional Council of Carpenters ("Union"). Under the contract, AG would hire members of the Union to perform work on construction projects that AG was completing. (Opinion,[1] 2) As part of the agreement, AG was required to make contributions to various union funds for employee "fringe benefits." (Opinion, 1) The Union alleged that AG failed to make some of these contributions and initiated an arbitration proceeding. AG did not defend itself in the arbitration proceeding. The arbitrator awarded the Union $713,200.27 in damages, interest, attorneys' fees, and costs. (Award, 4)

The New Jersey Regional Council of Carpenters (the "Council") filed a motion to confirm that arbitration award. (Dkt. 2) AG did not answer or otherwise appear. I granted that motion in part and denied it in part. (Dkt. 4) Specifically, the arbitrator had awarded actual damages, interest, liquidated damages, attorneys' fees, and arbitration costs. (Opinion, 4) I confirmed the arbitration award with respect to actual damages and arbitration costs, but did

---

[1] Citations to the record will be abbreviated as follows:

"Award" – Award and Order by J.J. Pierson, Arbitrator, Dkt. No. 1, Exh. D.
"CBA" — Building Contractors Association of New Jersey Collective Bargaining
    Agreement, Dkt. No. 1, Exh. A.
"Mot." – Motion to Confirm Arbitration Award by New Jersey Carpenters Funds and
    the Trustees Thereof; Dkt. No. 6.
"Opinion" – Opinion dated March 30, 2015, Dkt. No. 4.

2

not confirm the award with respect to interest, liquidated damages, or attorneys' fees.[2] (Opinion, 4) The arbitration award, I held, had not adequately explained how those portions of the award were calculated. (Opinion, 4-5) I did, however, invite the Union to file a motion for reconsideration within fourteen days in which it could explain how the arbitrator arrived at his figures. The Union has now filed that motion for reconsideration. With respect to the interest portion of the award, the motion requests that I now confirm the arbitrator's original award. (Mot., 2-3) With respect to attorneys' fees, the motion requests that I modify the amount that the arbitrator awarded. (Mot., 3) With respect to liquidated damages, however, the Union concedes that I should not confirm that portion of the arbitrator's award.

**Discussion**

**1. Interest**

The arbitrator awarded actual damages of $361,649.85, and awarded interest in the amount of $188,057.92. (Award, 3) According to the arbitrator's Order, the interest award represented "interest at the rate of 1% above the current prime rate per annum…on the unpaid balance of contributions for the period such monies remain outstanding." (Award, 3) In my prior opinion, I held that this was not a sufficient explanation of how the interest award was calculated. Without the start dates and end dates for the period for which interest was charged, I could not make even an approximate recalculation of the interest award. (Opinion, 4-5) Additionally, I observed that the rate the arbitrator reported using, "1% above the current prime rate," comes out to 4.25%. To generate almost $190,000 of interest on a principal balance of nearly $362,000 at a rate of 4.25%, the time period would have to be very long—so long that it seemed impossible that there wasn't some error in either the interest calculation or the explanation of that calculation. (Opinion, 5)

---

[2] I also awarded the Union its filing fee in this court. (Opinion, 6)

3

The Union has provided an explanation of how the arbitrator calculated the interest amount. Based on that explanation, it seems that the interest award is erroneous on its face. I will therefore modify the interest award to reflect a more conservative estimate of the interest due.

*The Union's explanation for the interest award*

In its motion for reconsideration, the Union has explained how the arbitrator arrived at his interest calculation. I note that this appears to be the Union's reconstruction of what *must have been* the arbitrator's thought process. As noted in my prior Opinion, it does not flow naturally or easily from the text of the Award itself. Here is what the Union says the arbitrator did:

- The arbitrator began with a principal amount of $361,649.85 (representing the total actual damages awarded). (Mot., 2)

- He then used an interest period of 52 months. The Union says this represented the period from January 1, 2010 (the date of the "accrual of AG Construction's delinquency") to April 30, 2014 (the date of the arbitrator's opinion).

- The Union says, albeit equivocally, that the arbitrator applied an interest rate of 12% per year, which is the rate provided for in Article XXVI(2) of the CBA.[3] Evidently trying to simplify matters, the arbitrator

---

[3] The Union, in its written explanation, states that although the CBA calls for a rate of 12% per annum, the arbitrator used a rate of 10% per annum. The Union explained that its "standard practice is to seek interest at 10 percent for collections arbitrations." (Mot., 2) However, in the actual calculation that the Union provided, it used an interest rate of 1% per month, which roughly equals a rate of 12% per year. *See* Mot., 2 (recalculating the interest to be "$361,649.85 * 0.010 * 52 mos. = ...$188,057.92"). I will construe the Union's argument to be that the arbitrator awarded interest at a rate of 12% per year, which is the rate provided for in Article XXVI(2) of the CBA.

4

> approximated that rate to be 1% per month, and multiplied 1% by the $361,649.85 in principal, then by the 52 month period, and arrived at interest of $188,057.92 (0.01 x 361,649.85 x 52 = $188,057.92).

Even with this explanation, however, it still seems that the interest calculation is erroneous on its face. See 9 U.S.C. § 11(a). Mainly, it is unclear when the $361,649.85 in unpaid fringe benefits (or each component of that sum) became due.

Interest, of course, can be charged only after a payment becomes due. If the entire payment fell due on January 1, 2010, and remained unpaid on April 30, 2013, then the delinquent party is liable for 52 months of interest. However, if half of that payment did not become due until, say, June 30, 2010, then the interest on that half portion did not begin to accrue until June 30, 2010.

There is every indication here that the entire $361,649.85 did *not* become due on January 1, 2010. The CBA provides that fringe benefit payments are due weekly. That is, a fringe benefit payment must be paid at the same time that the corresponding employee is paid for the work that generated the fringe benefit obligation. (*See* CBA, § XXIV(5) ("Fringe benefits must be paid weekly by check to the Shop Steward on the job...")).

The Union has stated that of the $361,649.85 in unpaid fringe benefits, $306,746.22 was attributable to fringe benefit contributions "during the period of January 1, 2010 through June 30, 2013." (Mot., 2). This seems to imply, without actually stating, that the $306,746.22 represents the total of benefits that accrued week by week from January 1, 2010 through June 30, 2013. If so, then the start date for the interest calculation would be the date on which each weekly payment became due. In other words, for the portion of the $306,746 that became due on, say, January 8, 2010, the interest would begin running

---

As for the arbitrator's statement that he calculated the interest using a rate of 1% above prime, the Union says simply that that "language in the Award...appears to be a mistake." (Mot., 3)

5

on January 8, 2010. But for the portion of the $306,746 that became due a week later, on January 15, 2010, the interest would not begin running until January 15, 2010.

What the arbitrator's award has done, in contrast, is to calculate interest as if the entire $306,746.22 became due on January 1, 2010. Maybe the obligation did become due then; I don't know. But that would seem inconsistent with the Union's statement that the $306,746.22 in actual damages was based on fringe benefit contributions "during the period of January 1, 2010 through June 30, 2013." (Mot., 2).

The same problem applies to the interest calculation for the remaining $54,903.63 in actual damages. The Union says this amount was "owing from payroll periods December 30, 2013 through February 22, 2014." (Mot., 2). But the Union calculates interest as if that entire amount became due on January 1, 2010.

There is therefore an evident miscalculation of figures in the arbitrator's award. 9 U.S.C. § 11(a). Rather than simply disallow interest, I will attempt to correct this apparent calculation error.

*Modifying the interest award*

As explained above, the Union, given at least two chances, has failed to supply any factual basis for the accrual of interest on the total balance starting from January 1, 2010. If I am not simply to disallow interest, I have no choice but to make the conservative assumption that the full amount of each portion did not become due until the last day of the period that the Union has identified. Thus, for the $306,746.22 that the Union says represented fringe benefits for the period January 1, 2010 through June 30, 2013, I will assume that the full amount became due on June 30, 2013. (Mot., 2) Likewise, for the $54,903.63 in damages that the Union says was attributable to the payroll period from December 30, 2013 through February 22, 2014, I will assume that the full amount of the $54,903.63 became due on February 22, 2014. In both

6

cases, I will assume that the arbitrator intended to calculate interest through the date of his decision on April 30, 2014.

Applying an interest rate of 12% to both of those principal amounts results in interest totaling $31,517.99.[4]

**Attorneys' fees**

The arbitrator awarded the Union some $90,412.50 in attorneys' fees. (Award, 3) To arrive at that figure, the arbitrator, without explanation, simply applied a rate of 25% to the $361,649.85 in actual damages awarded. (Award, 3) In my prior Opinion, I pointed out that the CBA seemed to provide that attorneys' fees would be calculated differently: the prevailing party would receive attorneys' fees in the amount of 27.5% of the first $750.00 awarded, and 22.5% of any amount awarded over $750.00. (Opinion, 5).

In its Motion, the Union agrees that the rates in the CBA should apply to any attorneys' fees awarded in this case. The Union thus suggests that I modify the arbitrator's order to award the Union $81,408.72 in attorneys' fees, representing a fee of $206.25 on the first $750 awarded (0.275 x 750 = $206.25); and $81,202.47 in attorneys' fees on the remaining $360,899.85 awarded (0.225 x 360,899.85 = $81,202.47). (Mot., 3) Because that is what the CBA requires, I will adopt that recalculation and modify the Award to provide for $81,408.72 in attorneys' fees.

---

[4] Interest is calculated using the formula $P \times (1+i)^{(n/365)} - P$ where:

    $P$ = the original payment due

    $i$ = the interest rate, here 12%

    ^ signifies an exponent

    $n$ = the number of days between the contribution due date and April 30, 2014 (the date of the arbitrator's decision).

I apply that formula to each portion of the actual damages awarded in this case:
- $306,746.22 x (1 + 0.12)^(304/365) – 306,746.22 = $30,363.88
- $54,903.63 x (1 + 0.12)^(67/365) – 54,903.63) = $1,154.11

Added together, those interest figures total $31,517.99.

7

**Liquidated damages**

In its motion for reconsideration, the Union has withdrawn its request that the Court confirm the arbitrator's award of liquidated damages. (Mot., 4). In that connection, I reiterate what I held in my prior opinion:

> The Arbitrator calculated a damage amount of $72,330.00. I am unable to discern where the liquidated damages amount comes from. There is no citation to a liquidated damages provision in the CBA.

(Opinion, 5) Was the arbitrator misled? Did the arbitrator simply err? It is hard to say. But the Union has not directed me to any relevant liquidated damages provision, so I will not confirm that portion of the award.

**Conclusion**

I will therefore order that the arbitrator's award will be confirmed, as modified in the following ways:
- I will reduce the award of interest in the amount of $188,057.92 (Award, 3) to $31,517.99.
- I will reduce the award of attorneys' fees in the amount of $90,412.50 (Award, 3) to an award of $81,408.72.
- I will remove the award of liquidated damages in the amount of $72,330 (Award, 3).

In addition, I incorporate by reference the portion of my prior Opinion in which I confirmed the arbitration award with respect to two categories of damages:
- Actual damages of $361,649.85.
- $750.00 in arbitration costs.
- The filing fee of $400 in this Court.

The total confirmed award, then, is $475,726.56. A separate order and judgment will issue.

Dated: April 15, 2015
Newark, New Jersey

KEVIN MCNULTY
United States District Judge